**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-CR-310-5 RLW |
| ) | |
| DEMOND WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This closed criminal matter is before the Court on Defendant's pro se Motion for Reconsideration (ECF No. 349) of the Court's Memorandum and Order of June 24, 2020 (ECF No. 329) that denied Defendant's pro se Motion for Compassionate Release/Reduction in Sentence under the First Step Act, 18 U.S.C. § 3582(c).[1] The Office of the Federal Public Defender filed a Sealed Motion to Reconsider Order Denying Defendant's Motion Seeking Compassionate Release (ECF No. 382) that alleges a new diagnosis of hypertension as a basis for compassionate release in addition to Defendant's status as a Black male smoker, and urges the Court to reexamine its analysis of the 18 U.S.C. § 3553(a) factors. The United States Probation Office filed a Report that verifies Defendant's current medical conditions. (ECF No. 425.) The Government opposes the Motions to Reconsider (ECF No. 448) and the Federal Public Defender filed a Reply in support (ECF No. 452) and filed two supplements to the Reply (ECF Nos. 456, 460).

The Court now reconsiders its previous denial of Defendant's pro se Motion for Compassionate Release and will grant compassionate release for the following reasons.

---

[1] The Office of the Federal Public Defender declined to supplement Defendant's original Motion for Compassionate Release. (ECF No. 319.)

**Background**

On July 12, 2017, Defendant was indicted on one count of Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(l), and 841(b)(l)(B); and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(l)(A).  Defendant pleaded guilty to count one of the indictment on September 25, 2018, and the Government later dismissed the firearm count.

The presentence investigation report ("PSR") determined Defendant's base offense level to be 28.  (ECF No. 175, ¶ 48.)  Defendant received a two-level increase for possession of a dangerous weapon, a firearm; and a three-level decrease for acceptance of responsibility for a total offense level of 27.  (Id. ¶ 57.)  Defendant had three criminal history points, establishing a Criminal History Category of II.  (Id. ¶ 87.)  Based on a Total Offense Level of 27 and a Criminal History Category of II, the guideline imprisonment range was from 78 months to 97 months.  (Id. ¶ 120.)  On March 22, 2017, the Court sentenced Defendant to a below-guidelines sentence of 70 months imprisonment and four years' supervised release.

The Bureau of Prisons ("BOP") placed Defendant at FCI Forrest City Low, in Forrest City, Arkansas.  In his pro se motion for compassionate release, Defendant asserted as grounds for release only the extraordinary and compelling circumstances caused by the COVID-19 pandemic and the inability to observe social distancing in the prison environment.  (ECF No. 305.)  In one of several pro se supplements to his motion, Defendant stated he is a "37 year old black man that smokes and by the C.D.C. that makes me high risk because of a compromised immune system." (ECF No. 321 at 1.)  In denying the pro se motion for compassionate release in June 2020, the Court stated among other things that Defendant offered no proof that his medical history made COVID-19 exposure especially dangerous for him, other than being a smoker.  (ECF No. 329 at

2

5.)  The Court observed that Defendant "offer[ed] no evidence to establish that he has a compromised immune system."  (Id.)

On October 6, 2020, the Centers for Disease Control and Prevention ("CDC") added current or prior smokers to the list of persons who are at increased risk of severe COVID-19 illness. CDC advice now states, "Being a current or former cigarette smoker increases your risk of severe illness from COVID-19."[2]  The CDC also advises that persons with hypertension or high blood pressure "might be at an increased risk for severe illness from the virus that causes COVID-19."[3]

**The Parties' Briefing on Reconsideration**

Defendant now seeks reconsideration and compassionate release on the basis that he faces a heightened risk of serious illness or death from COVID-19 due to his recently diagnosed hypertension, on top of his smoking, race, and gender.  With respect to his race, Defendant cites an analysis based on CDC data through June 6, 2020, which shows that in every age category, Black people are dying from COVID at roughly the same rate as white people more than a decade older, and the disparities are especially marked in somewhat younger age groups.[4]  For example,

---

[2] CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#smoking (last visited Nov. 24, 2020).

The Court clarifies that its statement in the Memorandum and Order of June 24, 2020, that Defendant "offers no evidence to establish that he has a compromised immune system," did not relate to the Court's interpretation of CDC guidance but instead to the lack of evidence, such as BOP medical records, to support the assertions in Defendant's compassionate release motion concerning his health condition.

[3] See n.2, *supra*.

[4] Tiffany N. Ford, Sarah Reber, and Richard V. Reeves, "Race gaps in COVID-19 deaths are even bigger than they appear," The Brookings Institution (June 16, 2020), https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-bigger-than-they-appear/ (last visited Nov. 24, 2020).

3

for those aged 35-44, Black death rates are approximately nine times higher than for whites, and overall the age-adjusted COVID-19 death rate for Black people is 3.6 times that for whites. (Id.)

Defendant urges the Court to reconsider its findings concerning his risks of exposure to the coronavirus at Forrest City Low and the BOP's ability to manage the virus. The Court had described a decline in active COVID-19 cases at Forrest City Low, as the BOP reported 511 active cases on June 8, 2020, and 140 active cases on June 23, 2020. (ECF No. 329 at 6.) Although active cases at Forrest City Low decreased steadily thereafter, with only nine active cases as of September 3, 2020 (ECF No. 382 at 6), there has been a significant number of new cases at the institution recently. Currently there are 56 active inmate cases and 15 active staff cases, with 619 inmates and 4 staff recovered, with no inmate or staff deaths.[5]

With respect to the Court's analysis of public safety and other 18 U.S.C. § 3553(a) factors, Defendant states that while he was a "lower level" courier in a larger drug conspiracy, responsible for "more than 700 grams of heroin and [he] possessed a weapon at the time of the transaction when he was arrested" (ECF No. 329 at 6), the Court should also weigh the impact of his personal drug abuse–notably his Percocet pain pill addiction–at the time of the offense and his substantial rehabilitation to date to overcome that addiction. (PSR, ECF No. 175, ¶ 103.) Defendant states he has completed the Drug Education course and the Non-Residential Drug Treatment Program and completed other classes ranging from parenting to emotional management to job training. (ECF No. 382-1 at 1-2). Defendant also states the BOP has classified him as a "low risk" to reoffend (id. at 8), and he has no disciplinary violations during his incarceration. (Id. at 5.)

---

[5] Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited November 24, 2020).

Defendant addresses the Court's stated concern that reducing his sentence could give rise to unwarranted sentencing disparities, as three of his co-defendants still awaited trial in June 2020. (ECF No. 329 at 6.)  Defendant argues this should not dissuade the Court from reducing his sentence as, if anything, it supports the opposite conclusion as he took responsibility for his conduct.  Defendant states that he was 35 years old at sentencing and had no felony convictions prior to this case.  Defendant asserts that his criminal history is minor and dated, as his most major criminal history is a 2001 trafficking case in which he completed probation, including 120 days of electronic monitoring, to discharge his suspended imposition of sentence.  (ECF No. 175, ¶ 65.) Defendant contends his history of successful completion of probation shows he will abide by any Court-ordered conditions of supervision, and he has a stable home plan with his mother.  Based on these factors, Defendant asserts the Court should find he is not a danger to the community and reconsider its prior finding that section 3553(a) factors foreclose his release.

The Government opposes reconsideration on the basis that Defendant fails to identify sufficient "extraordinary and compelling reasons" that warrant reconsideration of the Court's denial of his initial motion, much less satisfy the separate requirement of showing that the mandatory sentencing factors in 18 U.S.C. § 3553(a) weigh in favor early release.  The Government contends the Court's determination as to "extraordinary and compelling reasons" is restricted by the "binding policy statement" in Section 1B1.13 of the United States Sentencing Guidelines Manual, which "limits the universe of extraordinary and compelling reasons to five categories[.]"  (ECF No. 448 at 4.)  The Government asserts Defendant's hypertension is controlled by 10 milligrams of Lisinopril per day and he has been classified as healthy or needing only simple chronic care.  (ECF No. 425 at 2.)  It contends that nothing about Defendant's recent diagnosis should change the Court's prior analysis that he fails to show extraordinary and

5

compelling reasons which would warrant compassionate release, and the § 3553(a) factors continue to weigh heavily in favor of denying relief.

The Government states that this was an extremely serious offense involving more than 700 grams of heroin and the possession of a firearm while conducting a drug deal at a hotel placing the public at risk, and the Court was right to conclude that to reduce Defendant's sentence so significantly would lead to unwarranted sentencing disparities. As a result, it asserts that the § 3553(a) goals of promoting respect for the law and providing deterrence would be significantly thwarted if relief were granted, and argues these factors preclude a finding that Defendant is not a danger to the safety of other persons or the community.

Defendant replies that in the past seven months, the BOP has failed to stop the spread of COVID-19 in its institutions. Defendant states that as June 24, 2020, when the Court denied his pro se motion, the BOP reported a total of 7,125 COVID cases, both active and recovered, including inmates and staff, and as of October 27, 2020, that number has "exploded" to 18,646. (ECF No. 452 at 1 & n.2.)[6] Defendant also states that while the Government stresses the BOP "prohibit[s] all social . . . visits" (ECF No. 448 at 9) as an anti-COVID safeguard, the BOP reinstated social visits as of October 3, 2020.[7] Defendant notes that without social visits, over 11,000 people, both inmates and staff, tested positive for COVID-19 between June 24 and October 27, 2020, and asserts that "[a]dding more people who have been out and about in society into the

---

[6] As of November 24, 2020, this number appears to be 25,749 total active and recovered cases in the BOP, and 145 deaths. Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited November 24, 2020).

[7] Federal Bureau of Prisons, Bureau to Resume Social Visitation, https://www.bop.gov/resources/news/20200902_visitation.jsp (last visited Nov. 24, 2020).

prison, on top of BOP staff, will only serve to continue to increase the BOP's growing positive case load." (ECF No. 452 at 7.)

Defendant contends the Government neglects to address the CDC's revised criteria under which persons with a history of smoking "are at increased risk" of serious illness or death from COVID-19, while it downplays his risk from the coronavirus based on his hypertension because the CDC has advised that persons with this condition "might be at an increased risk" for serious illness or death. Defendant asserts that his history as a smoker, along with his hypertension, race, and gender make him particularly susceptible to dire effects of COVID-19. Defendant also asserts that the CDC's revision of its criteria to include smoking "should elicit a concession from the government that [he] meets section 3582(c)'s extraordinary and compelling requirement" based on Department of Justice guidance, as AUSAs in other districts have conceded that those with conditions on the CDC's list for individuals who are at increased risk for serious illness from COVID-19 present extraordinary and compelling reasons under 18 U.S.C.§ 3582(c)(1)(A). (ECF No. 452 at 6 & Ex. D.)

Defendant argues the Government's recitation of his role in the offense supports granting, rather than denying, his motion. Specifically, Defendant was "recruited" by Robert Hill to participate in the offense by "picking up heroin for Hill." (ECF No. 448 at 1.) Defendant states that someone else not only provided him with the cash for the heroin, but also something as simple and easy to purchase as a cell phone. (Id. at 2.) Defendant contends he was essentially a pawn, acting at the direction of others, even for basic steps. Further, while the Government also argues Defendant had a firearm in connection with the offense to support its dangerousness calculation (id.), Defendant asserts that he left the firearm behind in the vehicle instead of taking it with him when he approached the hotel entrance for the drug transaction, mitigating the dangerousness of

7

his possession. Defendant also states he had registered the firearm and could legally carry it at the time, as he was not a felon.

Defendant maintains that apart from his "middleman" role in the offense, his minor and stale criminal history demonstrates he is not a danger and can abide by supervised release conditions. Defendant reiterates that this offense turned him into a felon for the first time, in his mid-30s, and the bulk of his criminal history consists of traffic offenses or low-level misdemeanor convictions. Defendant states he had been on probation five times and each time successfully completed the probationary terms. (ECF No. 175, ¶¶ 65, 68, 69, 80, 84.) Defendant submits that his most serious criminal history is a nearly two-decades old trafficking second-degree case, incurred when he was eighteen years old, and this is one of the probationary sentences he completed to discharge his suspended imposition of sentence.[8] Defendant claims he has demonstrated he will comply with supervised release terms, and his stable home plan residing with his mother will aid in compliance.

**Legal Standards**

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A). As amended by the First Step Act, Section 3582(c)(1)(A) authorizes the Court to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons

---

[8]The PSR shows Defendant's Trafficking Second Degree case involved possession of "more than 2 grams of a mixture or substance containing cocaine base." (ECF No. 176, ¶ 65.)

8

>             warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

To be entitled to relief under the statute, Defendant must meet both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

### A. Exhaustion

Section 3582(c)(1)(A) imposes a statutory exhaustion requirement. The Court previously determined that Defendant administratively exhausted his claim because he submitted a request for reduction in sentence to the Warden of Forrest City Low which was denied on April 21, 2020. (ECF No. 309 at 4.) There is no dispute that Defendant has administratively exhausted his claim and his Motion for Reconsideration is properly before the Court for determination.

### B. Extraordinary and Compelling Reasons for Release

Section 3582(c)(1)(A) authorizes courts to reduce a sentence for "extraordinary and compelling reasons," but only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress has not defined "extraordinary and compelling reasons" except to state that "rehabilitation alone" does not suffice. 18 U.S.C. § 944(t) (cleaned up). The Sentencing Commission was authorized to define the term and it did so before enactment of the First Step Act, which amended section 3852(c)(1)(A) to, among other things, allow inmates to petition courts directly for compassionate release, and eliminate the BOP's previously exclusive "gatekeeper" role. See United States v. Rodriguez, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

Section 1B1.13 of the Sentencing Guidelines states that a sentence reduction under section 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

In subsections (A)-(C) of the Application Note to section 1B1.13, the Commission identified three "reasons" that meet the "extraordinary and compelling" standard of section 3582(c)(1)(A): (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances. See id. cmt. n.1(A)-(C). The policy statement also has a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. cmt. n.1(D).

The Government argues that Defendant does not meet the statutory standards and cannot show the reasons listed in the policy statement issued by the sentencing commission, and that the Court is restricted to the policy statement in Section 1B1.13 in making its decision. The Court has rejected this argument on numerous occasions, concluding that Section 1B1.13 does not limit the factors a district court can consider. See, e.g., United States v. Easton, 1:18-CR-22 RLW (Mem and Order of Nov. 17, 2020) (ECF No. 71); United States v. Carroll, 4:98-CR-351 RLW (Mem. and Order of Sept. 14, 2020) (ECF No. 201). Sentencing Guideline section 1B1.13 and

its Application Note 1 have not been amended to reflect the changes made by the First Step Act, because the United States Sentencing Commission has not had a quorum since the passage of the Act.  Guidelines Section 1B1.13 is inconsistent with the amended statute because it requires the BOP Director to make a motion for compassionate release.  Application Note 1 is inconsistent with the new law because its list of specific reasons that could justify compassionate release (medical condition, age, family circumstances) are not required by the statute and its catch-all "other reasons" subsection requires the BOP Director to determine what are "extraordinary and compelling" reasons.  For this reason, many district courts have found that the guideline does not limit the factors a court may consider but instead merely provides helpful guidance of some factors. See, e.g., United States v. Schaffer, 4:16-CR-426 CDP, slip op. at 4-5 (E.D. Mo. May 5, 2020); United States v. Brown, 2020 WL 2091802 at *5-6 (S.D. Iowa Apr. 29, 2020); United States v. Marks, 2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020); United States v. Resnick, 2020 WL 1658508 (S.D.N.Y. Apr. 2, 2020); United States v. Schmitt, 2020 WL 96904 at *3 (N.D. Iowa Jan. 8, 2020); United States v. Urkevich, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).

The Eighth Circuit Court of Appeals has not articulated the extent of a district court's discretion under the First Step Act to determine whether extraordinary and compelling reasons exist for compassionate release, but it has recognized that such discretion exists.  See United States v. Rodd, 966 F.3d 740, 746-47 & n.7 (8th Cir. 2020).  The Second Circuit Court of Appeals recently analyzed the First Step Act in depth in United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020).  The district court had denied defendant Zullo's motion for compassionate release relying on Guideline § 1B1.13, "which seemingly still required a motion by the BOP."  Id. at 234. The Second Circuit analyzed the language of the First Step Act and held it allows courts independently to determine what reasons, for purposes of compassionate release, are

11

"extraordinary and compelling," id. at 236, and that Guidelines § 1B1.13 Application Note 1(D) applies *only* where a First Step Act motion is filed by the BOP.  Id. at 230, 236.  The Second Circuit concluded "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237.

The Sixth Circuit Court of Appeals recently followed the Second Circuit and held that Guideline § 1B1.13 does not apply to cases where an imprisoned person files a motion for compassionate release.  United States v. Jones, No. 20-3701, __ F.3d __, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020).  The Sixth Circuit explained that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." Id. (citing Brooker, 976 F.3d at 234).  It concluded, "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.  In sum, "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." Id. at *9.

The Seventh Circuit Court of Appeals has also reached the same conclusion as the Second Circuit, holding that "Section 1B1.13 addresses motion and determinations of the [BOP] Director, not motions by prisoners."  United States v. Gunn, No. 19-3219-CR, __ F.3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) (citing Brooker, 976 F.3d 228).  The Seventh Circuit determined that "the Sentencing Commission has not yet issued a policy statement 'applicable' to

12

[prisoners'] requests." Id. The court concluded, "Until . . . § 1B1.13 is amended, . . . the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria— 'extraordinary and compelling reasons'—subject to deferential appellate review." Id.

In the absence of contrary authority from the Eighth Circuit, the Court finds the Second Circuit's analysis, as followed by the Sixth and Seventh Circuits, persuasive. The guideline and its application note are not "applicable" to a prisoner-filed motion and do not limit the factors a district court can consider with respect to compassionate release.

In Brooker, the Second Circuit described the defendant's background as follows:

> Jeremy Zullo became involved in serious crimes at a young age. He joined the drug trafficking conspiracy that would land him in prison at 17; he was indicted at 20; and he was convicted and sentenced at 22. On May 26, 2010, Zullo pleaded guilty to conspiring to traffic marijuana and more than five kilograms of cocaine, possessing a gun in furtherance of a drug crime, and using criminally derived property in a transaction valued at more than $10,000. These crimes required the district court to sentence Zullo to, at a minimum, separate 10-year and 5-year mandatory minimum sentences.

976 F3d at 230. After completing its analysis of the First Step Act, the court remanded the case to the district court because it could not "say, as a matter of law, that a court would abuse its discretion by granting someone compassionate release on this record." Id. at 237. The Second Circuit commented, "It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." Id. "Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad. The only statutory limit on

13

what a court may consider to be extraordinary and compelling is that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t) (emphasis added)."  Id. at 237-28 (internal citation and footnote omitted).

**Discussion**

The Court has carefully reviewed the record of this case and finds persuasive Defendant's arguments that its prior analysis of the § 3553(a) factors should be reconsidered.  It now concludes these factors weigh in favor of Defendant's resentencing to time served.  Defendant's lengthy sentence in this case was primarily driven by the drug quantity at issue, not by Defendant's criminal history or characteristics.  As Defendant points out, with respect to the circumstances of this offense, he was recruited by Robert Hill, the leader of the conspiracy, to pick up three kilograms of heroin at a hotel in exchange for $10,000.  Hill gave Defendant $10,000 and a cell phone for purposes of the transaction as well as contact information for the individual they believed to be the courier bringing the heroin, who was in fact an undercover officer ("UC").  (ECF No. 175 ¶ 37.)  At one point in the events, Hill contacted the UC and "said that [Defendant] was afraid to go to the hotel room.  Through a series of texts, [Defendant] agreed to meet with the UC courier at the back door of the hotel."  (ECF No. 155 at 4.)  Defendant owned a Glock handgun, registered in his name, but he left it in his vehicle when he arrived at the hotel for the exchange.

Since the time of Defendant's guilty plea and sentencing, most of his co-defendants and the defendants in a related case have been sentenced.[9]  The exceptions are the lead defendant, Robert Hill, who was found guilty following a jury trial and awaits sentencing in December 2020, and two fugitive defendants in the related case.  As a result, the Court's concerns about possible

---

[9]The related case is United States v. Benitez-Lopez, et al., No. 4:16-CR-476 RWS.

sentence disparities among co-defendants is no longer an issue. Moreover, the Court had the opportunity during Robert Hill's trial to hear evidence concerning Defendant's role in the conspiracy in addition to that which was contained in the Presentence Investigation Report and Guilty Plea Agreement. The Court has a better appreciation of the nature and scope of the Hill drug conspiracy and Defendant's limited, low-level role therein than it did at the time of sentencing. Also, the Court now believes the fact that Defendant left his legally owned and registered firearm in his vehicle during the transaction is properly considered a mitigating factor. Having considered the nature and circumstances of the offense, the Court now concludes that Defendant's 70-month sentence was greater than necessary to comply with the sentencing factors of 18 U.S.C. § 3553(a).

The Court also has a fuller understanding of Defendant's personal history and characteristics including his education, history of employment, and addiction at the time of this offense. Defendant completed the eleventh grade and left school to work. He reportedly earned his GED the following year, although the record is not entirely clear. Defendant owns an eighteen-wheel semi-truck and was self-employed in his own business between 2013 and his arrest, using the truck to provide fulfillment orders. Defendant reported he had always worked to support himself. (PSR, ECF No. 175 ¶¶ 113, 115.) Defendant was thirty-five years old at the time of his arrest in this case and was by no means a career criminal although he has had numerous arrests. Defendant's only prior felony arrest was from 2001 when he was eighteen years old. In that case, he was convicted on a state charge of trafficking second degree for possessing a very small amount of cocaine base, and received a suspended imposition of sentence and five years' probation which he successfully completed. (Id. ¶ 65.) Defendant has a total criminal history score of three and a criminal history category of II. (Id. ¶ 87.) At the time of his arrest in this

case, Defendant reported daily marijuana use and addiction to Percocet pain pills that he developed after being shot multiple times in the legs by unknown assailants while he was driving on the highway in 2013.  (Id. ¶¶ 100, 103.)   These factors also indicate Defendant's 70-month sentence was greater than necessary to comply with the sentencing factors of 18 U.S.C. § 3553(a).

While in BOP custody, Defendant has made significant efforts to better himself by taking drug education programming and completing numerous classes, including Non-Residential Drug Abuse, Drug Abuse Education, Parenting, Emotion Management, HVAC, Philosophy, Re-Entry and You, Job Search, Basic Investing, Changing Directions, Disease Prevention, and Time Management (ECF No. 382-1 at 4-5).   Defendant has a clean disciplinary record in BOP custody, having incurred no citations for non-compliance with prison rules, and has been designated by the BOP as a "low risk" for recidivism.  (Id. at 5, 8.)   The Court places great weight on Defendant's post-sentencing conduct and positive prison record, which "provides the most up-to-date picture of [his] 'history and characteristics.'"   Pepper v. United States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).

Defendant's home detention eligibility date is June 1, 2022, and his pre-release plan is to return to his mother's home and his trucking business.  (ECF No. 305.)   Defendant has served well over half of the sentence, which was his first significant term of imprisonment.   The Court finds that the time Defendant has served is sufficient to afford adequate deterrence to any future criminal conduct, and his age, health issues, positive prison record, employment history, and release plan indicate Defendant's risk of engaging in further criminal conduct is minimal and can be managed through the terms of his supervised release.  See 18 U.S.C. § 3142(g) (stating that conditions of release can mitigate danger to the community).   With appropriate supervision, the

16

Court concludes that Defendant will not be "a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."

Defendant is a former smoker. As a result, under current CDC guidance, he is at increased risk for severe illness from COVID-19.[10] BOP medical records show Defendant has recently been diagnosed with hypertension. The CDC advises this medical condition may place Defendant at increased risk for severe illness from COVID-19.[11] "Severe illness from COVID-19 is defined as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death."[12] The fact that Defendant is both a former smoker and has hypertension further increases his risk for severe illness from COVID-19: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."[13] Further, CDC data indicate that the effects of COVID-19 are more severe and disproportionate on Blacks.

Defendant's imprisonment during the COVID-19 pandemic places him at greater risk of catching and becoming seriously ill from COVID-19 because he is unable to observe social distancing protocols. Despite the BOP's significant efforts at mitigation and containment, it appears Defendant is objectively at significant risk of contracting the disease and cannot engage in adequate social distancing behavior in the institutional environment. According to public health experts, social distancing measures are the most effective way to combat the rapid spread of COVID-19 and prevent illness. "Limiting close face-to-face contact with others is the best way to reduce the spread of coronavirus disease 2019 (COVID-19). . . . Social distancing is

---

[10] See n.2, *supra.*

[11] Id.

[12] Id.

[13] Id.

especially important for people who are at higher risk for severe illness from COVID-19."[14] Unfortunately, in the context of institutional confinement, social distancing can be nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, closed facilities.   In light of this reality, courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons "is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."  See Basank v. Decker, 449 F.Supp.3d 205, 211 (S.D.N.Y. 2020); see also United States v. Harris, 451 F.Supp.3d 64, 67 (D.D.C. 2020).

**Conclusion**

The Court finds the foregoing factors, considered together, constitute extraordinary and compelling reasons to reduce Defendant's sentence.  Defendant's Motions for Reconsideration will be granted.  Defendant's sentence is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), and he shall be immediately released from custody.   Upon his release, Defendant will be subject to the conditions of supervision for a period of four years on terms previously imposed, as will be set forth in the amended judgment to be entered by the Court.  All other aspects of Defendant's sentence remain unchanged.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Demond Williams' pro se Motion for Reconsideration (ECF No. 349) and Sealed Motion to Reconsider Order Denying Defendant's Motion Seeking Compassionate Release (ECF No. 382) are **GRANTED**.

---

[14]Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Social Distancing, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited November 24, 2020).

**IT IS FURTHER ORDERED** that Defendant Demond Williams' sentence is reduced to time served, with four (4) years supervised release on terms previously imposed. The sentence will be effective immediately and Mr. Williams shall be immediately released from the custody of the Bureau of Prisons. An Amended Judgment will be issued separately.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall provide a copy of this Order to the Probation Office and to the Federal Bureau of Prisons.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 25th day of November, 2020.